UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KOREAN AIR LINES CO., LTD.,<br><br>Defendant. | Misc. No. 07-324 (JDB)<br><br>**FILED**<br><br>AUG 2 2 2007<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## MEMORANDUM OPINION

This case arises out of the plea agreement reached by the Department of Justice Antitrust Division ("DOJ") and Korean Air Lines Co., Ltd., to resolve alleged criminal violations of the Sherman Act, 15 U.S.C. § 1. See United States v. Korea Air Lines Co., Ltd., Cr. No. 07-184 (D.D.C.). Two Korean Air employees have filed an expedited application requesting redaction of their names from the plea agreement that DOJ anticipates publicly filing at the plea hearing on August 23, 2007. The plea agreement provides immunity for the offenses described in the agreement for all Korean Air employees except for movants and five others who the agreement identifies by name as excluded from the cooperation and non-prosecution provisions. The movants contend that this public identification, viewed against the backdrop of the allegations in the information filed against Korean Air and DOJ's prior public statements, effectively labels them unindicted co-conspirators in violation of their right to due process under the Fifth Amendment. The motion, filed on August 20, 2007, has now been fully briefed, and is ready for decision. A careful review of the plea agreement and statements attributed to DOJ confirms that none of the documents -- alone, or collectively -- expressly or impliedly identifies the movants as co-conspirators or otherwise criminally liable. Therefore, the application will be denied.

## DISCUSSION

The Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication.[1] See, e.g., In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981) (citing United States v. Briggs, 514 F.2d 794, 802-06 (5th Cir. 1975)); United States v. Anderson, 55 F. Supp. 2d 1163, 1168-69 (D. Kan. 1999); see also Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("[W]here the state attaches a 'badge of infamy' to the citizen, due process comes into play."). The more typical case involves an aggrieved person seeking to expunge an indictment revealing his identity as an unindicted co-conspirator; courts have generally found such disclosures to violate the due process rights of the person revealed. See Briggs, 514 F.2d at 802-06; United States v. Chadwick, 556 F.2d 450, 450 (9th Cir. 1977); Application of Jordan, 439 F. Supp. 199, 204-09 (S.D.W.Va. 1977). However, the due process protection is not limited to accusations against the uncharged in an indictment, but rather extends to other criminal accusations made by a government attorney, including accusations in factual proffers and other court memoranda. See In re Smith, 656 F.2d at 1106 (explaining that "in Briggs, [the court] found that the liberty and property concepts of the Fifth Amendment protect an individual from being publicly and officially accused of having committed a serious crime," and that this holding extended to statements made by government counsel at a plea hearing); Anderson, 55 F. Supp. 2d at 1167 ("In Smith, the Fifth Circuit extended the Briggs rule well beyond the grand jury context, and

---

[1] In the related case of Doe v. Hammond, Civil Action No. 07-1496 (D.D.C.), a similarly situated plaintiff makes a similar due process argument and also raises the issue whether the anticipated disclosures in the plea agreement violate Fed. R. Crim. P. 6(e). In a decision also issued today, the Court has considered that argument, and concluded that Rule 6(e) is not violated. See Doe v. Hammond, Civil Action No. 07-1496, slip op. (D.D.C. Aug. 22, 2007). That same conclusion would apply here for the reasons stated in the Doe opinion.

ordered other court filings and records naming an unindicted co-conspirator sealed and struck."). The government does not take issue with this basic principle -- indeed, its primary case acknowledges this principle as correct. See United States v. Crompton, 399 F. Supp. 2d 1047, 1049 (N.D. Cal. 2005) (finding no due process violation where "the Plea Agreement does not allege criminal activity on [the movant's] part nor does it implicate [the movant] in any wrong-doing"). Instead, the government disputes the movants' characterization of the plea agreement and DOJ statements as effectively identifying them as unindicted co-conspirators

The Court thus turns its attention to the relevant provisions of the Information, the plea agreement and the DOJ statements cited by movants. To begin with, the Information charging Korean Air with two counts of conspiring to violate the Sherman Act, 15 U.S.C. § 1, does not identify any unindicted co-conspirators by name. It states only that: "individuals, not made defendants . . . participated as co-conspirators in the offense[s] charged . . . and performed acts and made statements in furtherance of it." Information ¶¶ 2, 14. The Information goes on to describe the conduct of the defendant and the "co-conspirators," but provides no indicia as to the identity of the co-conspirators. Movants contend that the Information implies that the co-conspirators are Korean Air employees, but as the government correctly points out, that reading makes little sense because a conspiracy consisting only of an employer and its employees does not violate Section 1 of the Sherman Act. See Govt's Mem. at 8 n.5 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768-72 (1984)).

More significantly, the plea agreement, which the Court has reviewed, does not identify the movants as co-conspirators, or otherwise describe them as being targets of an investigation or facing criminal liability. It provides only that the listed individuals are excluded from the cooperation and non-prosecution provisions of the agreement, without explaining the basis for

the exclusion. The provisions in which the movants are named state, in full, as follows:

> 12.   The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo transportation services and/or passenger transportation services, any other federal investigation resulting therefrom, and any litigation or other proceeding arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:
>
> * * *
>
> (b)   using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States -- but excluding [Name, Name, Name, Name, Name, Name, and Name] -- including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.
>
> * * *
>
> 15.   The United States agrees to the following:
>
> (a) Upon the Court's acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of the antitrust conspiracy involving the sale of international air cargo transportation services and/or passenger transportation services ("Relevant Offenses"), except that the protections granted in this paragraph shall not apply to [Name, Name, Name, Movant No. 1, Name, Movant No. 2, and Name].

See Plea Agreement ¶¶ 12, 15 (submitted to chambers on August 2, 2007). No further explication is needed to establish that no criminal accusations are made against the "carved out" employees -- the text of the plea agreement speaks for itself.

Movants contend, however, that these provisions of the plea agreement must be read in light of a DOJ press release issued on August 1, 2007 announcing the plea agreement, and comments by a senior official in the Antitrust Division on the meaning of "carve-out" status. But the general reference in the press release to an "ongoing investigation" hardly amounts to an accusation of criminal wrongdoing by the movants. See Movants' Mem., Ex. A-3 ("Today's plea

4

agreements are the first to arise from the Antitrust Division's ongoing investigation into the air transportation industry.").

And as for the comments by the Antitrust Division on the meaning of "carve-out" status, they simply cannot be characterized as transforming the "carve-out" provisions of the plea agreement into allegations of criminal wrongdoing. Those comments indicate that culpability is one possible reason for carving out an employee from a corporate plea agreement, but also indicate other possible reasons, including the bare refusal of an employee to cooperate or the need to develop additional evidence. See Scott D. Hammond, Assistant Attorney General for Criminal Enforcement Antitrust Division, DOJ, Measuring the Value of Second-In Cooperation in Corporate Plea Negotiations, Address at the 54th Annual American Bar Ass'n Section of Antitrust Law Spring Meeting (Mar. 29, 2006), at 7-8 ("Movant's Mem, Ex. A-7").[2] The

---

[2] The Hammond comments state, in relevant part:

> Most corporate plea agreement provide a non-prosecution agreement for company employees who cooperate fully in the investigation. Yet certain culpable employees, employees who refuse to cooperate, and employees against whom the Division is still developing evidence may not receive protection under the company plea agreement. These individuals are often referred to as "carve outs," meaning they are excluded (or "carved out") of the company deal. Culpable carve outs must negotiate separate plea agreement or face indictment. Most companies place a high value on minimizing the number of carve outs.
>
> Second-in companies that cooperate early in an investigation often have the advantage of being able to offer new and significant evidence through multiple employees. When this is the case, the Division will typically carve out only the highest culpable individuals as well as any employees who refuse to cooperate; mid-to-lower level employees who provide significant evidence furthering the investigation will be offered non-prosecution under the corporate plea agreement. In addition, those employees who are carved out often are able to negotiate more favorable deals because they are in a position to offer valuable cooperation early on in an investigation.

Movants' Mem., Ex. A-7, at 7-8.

Antitrust Division comment that it "will typically carve out only the highest culpable individuals" must be read in the context of the other identified bases for a carve out decision. Within that context, the comments do not render "accusatory" the carve out provisions of the plea agreement. See Crompton, 399 F. Supp. 2d at 1049 (holding that no inference of criminal wrongdoing could be drawn from one's carve out status in a plea agreement and thus that due process was not denied by disclosure of identity of corporate officer).[3]

Movants also contend that the government's disclosure of their names in the plea agreement is in violation of the United States Attorneys' Manual ("USAM") directive stating that "in the absence of some significant justification, it is not appropriate to identify . . . a third-party wrongdoer unless that party has been officially charged with the misconduct at issue." See Movants' Mem. at 9 (quoting USAM § 9-27.760). But as the Court explained above, the language of the plea agreement, either expressly or impliedly, does not describe the movants as engaging in any wrongdoing.[4]

Movants fear that even in the absence of any specific accusation of wrongdoing, their identification in the carve out provisions of the plea agreement will lead to their being named defendants in class action lawsuits. That possibility does not render the carve out provisions accusatory in nature. The identification of movants in the carve out provisions may, indeed, lead

---

[3] Assuming arguendo that the carve out provisions of the plea agreement can be considered sufficiently stigmatizing to implicate a due process interest, the Court would find that interest outweighed by the right of the public and the press to have access to court proceedings (see Washington Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991)) and the victims' right of access to the terms of a plea agreement under the Crime Victim Rights Act, 18 U.S.C. § 3771.

[4] In any event, the USAM specifies that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." See USAM § 1-1.100 (available at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html).

civil plaintiffs to explore whether a basis exists for imputing civil liability to movants. But there is nothing in the Due Process Clause that entitles a person to protection from civil litigation, nor have the movants cited any support for this assertion. Furthermore, as the government notes, a civil plaintiff making a claim against movants must do so in good faith and in compliance with Fed. R. Civ. P. 11(b), including making a reasonable inquiry. If the movants' future inclusion as defendants in the civil litigation is unfounded, they may have recourse under the Federal Rules of Civil Procedure.

The Court pauses here to address the movants' motion for leave to file the case under seal. Movants contend that sealing is warranted because their application for relief discloses the very information they are seeking to have redacted -- that is, their identities as carve outs in the plea agreement. The Court has concluded that they are not entitled to the requested redaction, and hence they will presumably be identified by name in the plea agreement, which would at first glance suggest that the motion to seal should be denied. However, there are disclosures of other sensitive information in both the movants' and government's briefs, albeit information that the Court has found unnecessary to include in this opinion. Therefore, the Court will grant the motion to seal the briefs, but make this opinion publicly available. However, the Court will direct the Clerk of the Court to delay posting of this opinion on the public docket until 3:00 p.m. on August 23, 2007, after the plea hearing has been completed.

## CONCLUSION

For the foregoing reasons, the movants' application for relief will be denied. All papers filed in this matter shall remain under seal but this opinion will be public released. The entry of

this opinion and accompanying order on the public docket shall be delayed until 3:00 p.m. on August 23, 2007.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Date: __August 22, 2007__